## THE STATE v. JOHN R. BURTON, Appellant.

Division Two, February 15, 1916.

1. **FAILURE TO SUPPORT WIFE: No Element of Vagrancy.** Section 4789, Revised Statutes 1909, declaring, among other things, that "every able-bodied married man who shall neglect or refuse to provide for the support of his family . . . shall be deemed a vagrant" and upon conviction punished by imprisonment or fine, is a statute defining vagrancy, and cannot be used to enforce a civil liability; nor is a husband who

honestly tries to obtain work and is unable to procure sufficiently remunerative employment to properly support his family, a criminal or a vagrant, nor can he be punished under said statute. [Disapproving Marolf, v. Marolf, 191 Mo. App. 239, so far, if at all, as it conflicts with this holding.]

2. ———: ———: **Placing Wife With Sister to Board.** A husband who at a time when he was receiving sixty dollars per month put his wife and child with her sister under an agreement to pay her twenty dollars per month for their board and lodging, and paid the amount regularly for three months, and who, having lost his position, after two or three weeks' effort to secure employment obtained a position at a hotel at five dollars a week, cannot be convicted for failure during the next three months to pay to his wife or her sister any part of the five dollars, his purpose being to discharge his obligation to his wife's sister as soon as he was able.

3. ———: ———: **Wife With Money.** The gift of one thousand dollars by the wife to her sister within the time her husband was unable to obtain remunerative employment simply has a tendency to show the wife was not in destitute circumstances.

Appeal from St. Louis Court of Criminal Correction. —*Hon. Benjamin F. Clark,* Judge.

REVERSED AND DEFENDANT DISCHARGED.

*Fish & Fish* for appellant.

*John T. Barker,* Attorney-General, and *Kenneth C. Sears* for the State.

REVELLE, J.—This cause was originally appealed to and decided by the St. Louis Court of Appeals, and certified to us for final determination because one member of that court deemed the majority opinion to be in conflict with the decision of the Kansas City Court of Appeals in the case of Marolf v. Marolf, 191 Mo. App. 239.

The case involves the correct construction of section 4789, Revised Statutes 1909, and its application to the facts here disclosed. The substantive part of

the charge is that defendant, being an able-bodied married man, did wilfully neglect and refuse to provide for the support of his lawful wife and child, in that he neglected to provide the necessary food and clothing for their maintenance and support, and left them wholly destitute of the same and in a condition of suffering and want. The information is predicated upon that clause of the following section (Sec. 4789, R. S. 1909) italicized:

"Every person who may be found loitering around houses of ill-fame, gambling houses, or places where liquors are sold or drank, without any visible means of support, or shall attend or operate any gambling device or apparatus, or be engaged in practicing any trick or device to procure money or other thing of value, or shall be engaged in any unlawful calling whatever, and *every able-bodied married man who shall neglect or refuse to provide for the support of his family,* and every person found tramping or wandering around from place to place without any visible means of support, *shall be deemed a vagrant,* and upon conviction thereof, shall be punished by imprisonment in the county jail not less than twenty days, or by fine not less than twenty dollars, or by both such fine and imprisonment."

The evidence tends to prove that defendant is an able-bodied man and with his wife lived at the home of his parents from April, 1912, the time of his marriage, until the latter part of January, 1913, at which time his parents changed their residence, and defendant thereupon made arrangements with his wife's sister to furnish his wife, as well as his recently born child, with board, lodging and necessary care. In consideration of this, he agreed to pay the sister the sum of twenty dollars per month, the understanding being that this arrangement should continue until such time

as defendant could earn money sufficient to enable him "to take her to a flat of some kind." At that time he was in the employ of the American Car Company, and was receiving sixty dollars per month. This plan and arrangement seemed entirely satisfactory to all parties concerned at the time of its adoption, and, in pursuance thereof, the wife and child received from the sister proper care and maintenance, and the defendant, up to March 25, 1913, paid the sister the aggregate amount of twenty-five dollars. In the meantime defendant lost his position with the car company, and, after two or three weeks' effort (honest effort, so far as the record here discloses), he procured work at a hotel at a wage of five dollars per week, and in this capacity, and at this remuneration, he served to the time of his trial, to-wit, July, 1913. After March 25th he made no payments to the wife's sister, and did not otherwise contribute to the support and maintenance of his wife or child. His explanation of this was that he had an invalid father for whom he was also trying to care; that he knew his wife and child were being well provided for by relatives with whom he had contracted, and that his hire had not been sufficient to enable him to fully carry out his part of the contract with his wife's sister, although he recognized his legal liability to the sister and expressed his desire to discharge same when able.

It also appears from the record that the wife had personal property of her own amounting to something over a thousand dollars, but her brother and sister explained that this the wife *gave* to the sister.

The defendant also stated that his inability to procure more remunerative employment was due in part to the action of his wife's brother (chief witness for the State) in refusing to endorse and recommend him for certain positions when called upon to so do.

I.   There is no evidence that the sister with whom the contract was made, or anyone for her, at any time notified the defendant that, because of his breach and failure to promptly pay, the wife and child were not receiving, and would not receive, the care and necessaries for which he had contracted, and which, seemingly, were adequate to their wants and station in life. On the other hand, the record discloses that they did, in point of fact, receive such, and were not, as the information alleges, "left wholly destitute of food and clothing, and in a condition of suffering and want." They were not cast upon the charity and mercy of the world, and, so long as the sister saw fit to continue her part of the agreement, as she had done up to the time of the trial, and take her chances on collecting the debt, there was no likelihood of defendant's family becoming destitute or in want or a burden upon the State; nor is there evidence that had she refused to further care for them, in pursuance of her contract, the defendant would not, to the extent of his ability, have made other arrangements for their care and support. What is the distinction between this case and that of the man who, upon his credit and by his agreement to pay, induces the butcher, grocer and merchant to furnish supplies and life's necessities to his family, and then refuses to pay therefor? The defendant's conduct in this case evinces, at least, a solicitude for his family, even though it shows not the same concern about the payment of his debts. This case smacks too strongly of an effort to use the criminal laws for the purpose of enforcing a civil liability. This statute was not enacted to protect creditors, or make the liberty of men security for their debts; it is not so nominated in the bond, and we have rather ancient and long-standing authority for refusing to extend the terms of such a bond; neither was it enacted to add further

**Failure to Support Wife.**

State v. Burton.

pangs to the "wretched soul already bruis'd with adversity." It is a statute defining *vagrancy*, and by its very terms excludes the man who is not able-bodied. Why this express exemption, except upon the theory that a man shall not be denounced and punished as a criminal when nature or earthly misfortune has rendered him physically unable to fulfill his marital and paternal obligations; and if this is the spirit of the act why hold responsible the man to whom misfortune has come in *other* forms? Poverty brings its suffering and adversity its sorrow, but neither, in themselves, is disgraceful, and until the properly constituted authority so expressly ordains, I am unwilling to brand them criminal. Why should the man who, because of business depression, or peculiar misfortune, is unable to procure sufficiently remunerative employment to properly support his family be branded as a vagrant and a criminal?

In the case at hand the evidence does not disclose that the defendant was not at all times willing and anxious to; and in point of fact, did work, and was earning such compensation as his employment and efforts permitted. Should he then be placed in the class denounced by this statute—the class of the vagrant and vagabond and among those who loiter around houses of ill-fame, gambling houses, etc.? In Gallemore v. Gallemore, 115 Mo. App. l. c. 191-2, NORTONI, J., in discussing this section, said: "Indeed, such a construction in times of commercial depression and paralyzed industry, might prove ruinous to the peace and repose of society. Men theretofore honest, seeking employment, would be, in many instances driven to pillage and plunder to render the support required, rather than render themselves liable to prosecution and subject to divorce proceedings upon their failure to provide such support. No such unjust and unreasonable construction of the statute should be had or even contemplated for a moment. It therefore

must necessarily follow that the Legislature intended, when it provided that an able-bodied man should be deemed a vagrant when he either neglects or refuses to support his family, that it was leveling the penalty of the law only at the *vagabond husband* who had the means or ability to render such support and neglected or refused, and that it was not intended to level such penalty at the husband who was willing to do so and whose neglect or failure in that respect arose solely from his inability to find employment. It seems quite clear that such a case was not contemplated as being within the spirit of the act. Indeed, the employment of the words 'neglect' or 'refuse' by the Legislature is demonstrative of the intent. 'Neglect' arises from an inattentive state of mind, want of care for and an utter disregard of, in this connection, the obligation resting upon the husband to support his family; whereas, the word 'refuse' imports a wilful disavowal of or disregard for such obligation. It is therefore obvious that the husband who is denounced as a vagrant, is one who neglects or refuses the support from his want of proper regard for the social duties and obligations of life, his total or partial disregard of the ties of filial affection, and his insensibility to and want of respect for the family relation upon which the whole superstructure of civilized society rests.''

The evidence also discloses that the wife had personal property of the value of more than one thousand dollars, and that she *gave* this to her sister. Comment on this is unnecessary, further than to observe that it only emphasizes the notion that she was not in a destitute or suffering condition, and that this prosecution is for purposes other than that contemplated by the law.

The majority opinion of the Court of Appeals in this case is in accord with Dwyer v. Dwyer, 26 Mo. App. 647, Gallemore v. Gallemore, 115 Mo. App. 179, and State v. Burton, 171 Mo. App. 345, and we see no

substantial conflict between it and the case of Marolf v. Marolf, 191 Mo. App. 239, but to the extent that minds may differ as to these respective holdings the latter is disapproved.

The judgment of the court of criminal correction is therefore reversed, and the defendant discharged. *Faris, P. J.,* and *Walker, J.,* concur.