STATE OF MISSOURI, Respondent, v. ISADORE LEVY, Appellant.

St. Louis Court of Appeals. Opinion Filed July 2, 1923.

1. **CRIMINAL LAW:** Appellate Practice: Complete Record Filed: Whole Record Must be Examined for Errors. Where appellant in a criminal case has perfected his appeal in the appellate court by

State v. Levy.

filing a full and complete manuscript record, including bill of exceptions, judgment and sentence, by force of section 4106, Revised Statutes 1919, the whole record must be examined for errors even though appellant has not briefed or argued the case, and the State is not represented by the prosecuting officer or otherwise.

2. **VAGRANCY: Non-Support of Family: Evidence: Insufficient to Support Conviction.** In a prosecution for vagrancy, under section 3501, Revised Statutes 1919, providing that every able-bodied married man who shall neglect or refuse to provide for the support of his family, shall be deemed guilty of a misdemeanor, evidence reviewed and *held* insufficient to support a conviction.

3. ————: ————: ————: **Weighed in Same Balance as are Other Criminal Charges.** In a prosecution for vagrancy for neglect or failure to support family, the proof must be weighed in the same balance as are other criminal charges.

4. ————: ————: **Intent: Necessary Element.** To support a charge of vagrancy for non-support of family, a guilty intent must be proven either directly or inferentially.

Appeal from the St. Louis Court of Criminal Correction. —*Hon. Calvin N. Miller,* Judge.

REVERSED AND DEFENDANT DISCHARGED.

DAUES, J.—The defendant was convicted of vagrancy under section 3551, Revised Statutes 1919, particularly under that clause of said section which provides that every able-bodied married man who shall neglect or refuse to provide for the support of his family shall be deemed guilty of a misdemeanor.

The information was filed May 20, 1921, and charges that the crime was committed on and prior to May 19, 1921. The family is named as a wife and two children, the children then being ten and eight years of age. The trial was had before the court of criminal correction sitting as a court and jury; the defendant was found guilty and his punishment fixed at one year in the Workhouse, and defendant brings the case here on appeal.

Appellant has perfected his appeal by filing here a full and complete manuscript record, including bill of

exceptions, judgment and sentence. Appellant has not briefed or argued the case here; neither is the State represented by the Law Officer, or otherwise. We have taken the case as submitted on the record. By force of statute we must examine the whole record for errors. [Section 4106, R. S. 1919.]

The evidence runs thus: The State produced one Abe Spasser, a brother of defendant's wife, who testified that defendant and his wife had been married for ten or twelve years but had separated about two and a half months before this prosecution was begun; that since the separation defendant gave his wife and children $10 only, so far as he knew; that he had received this information from his sister; that defendant's wife worked off and on during her entire married life and earned between $10 and $20 a week during that time; that defendant was an able-bodied man, not sick, and that witness had aided defendant's wife and children with money, and that defendant's children were not properly clothed or provided for during the two or three months since the separation of defendant and his wife. Witness further said he had heard from his sister that defendant was working for his father, but that he did not know how long he had worked or what amount of money he was making. He testified defendant's regular work was that of a tailor in a factory.

Benjamin, the son, ten years old, was placed on the stand and testified, in effect, that he and his sister were being provided for by their mother and not the father, and that he saw his mother receive only $10 from his father during the two and a half months prior to the prosecution.

Another witness, from whom Mrs. Levy was then renting rooms, testified that she borrowed small sums of money from him, and that the family was in impecunious circumstances. Substantially this is the State's case.

For defendant, Martin Gross testified that he knew the prosecuting witness, Mrs. Levy; that she had worked

about five months a year for him for several years, and that she was earning about $20 a week during the time she worked.

Defendant in his own behalf testified that he had been married to the prosecuting witness for twelve years and had lived with her continuously up until two and a half months before the day of the trial; that he came home from work one evening about 7:30 and found the doors locked and his clothes thrown out in the hall; that his wife refused to open the door and told him to leave and go to his father's home; that he went away and got something to eat and returned about 9:30 and still found himself locked out and was compelled to go elsewhere to sleep; that the wife has refused to allow him to return since. Defendant says he was a tailor, and had been working for a large tailoring company here in the city, and that he had been working steadily and had been earning from $25 to $28 a week, and that he turned over his pay envelope with his earnings to his wife; that he would take for himself only so much money as was necessary for carfare and lunch money, and that he had been working steadily for twelve years; that during all that time he gave his money to his wife for the support of the family; that he had done everything possible for their support, and that during all these years the only money he received out of his labor was what the wife gave him from his pay envelope as he needed it. Defendant said he never left his wife, but that she locked him out of the house without good cause and has since kept him out; that he has been trying continuously to get back to his wife, making an effort at least once a week for a reconciliation so that he could return to take care of the family. He said that he had been out of work for two and a half months; that he did work in a hardware store, earning $15 thereby; that the wife had instituted divorce proceedings after the separation; that he amply supported the wife and children up to April 15, 1921; that a motion for alimony and attorneys' fees was made by the circuit court about that time, and that after the order

212 M. A.—10

of the court directing him to pay $10 a week temporary alimony, he paid $10 once and had earned $10 at another time and offered to give his wife $7 of same, which she refused to take, and when he put the money on the table she threw same on the floor. Defendant testified that he was ready and willing to work and was looking for a job every day and that he would receive employment on Monday following the trial and would give his family his earnings. Defendant further testified that the wife proposed to him that if he would consent to a divorce she would relieve him from any support money, but that he declined to give such consent.

From his resume of the record evidence it will be seen that our duty is plain. Under such circumstances this judgment of conviction should not be permitted to stand as there is no substantial evidence to support the constituent elements of the offense denounced by the statute and as is charged in the information. [State v. Burton, 267 Mo. 61, 183 S. W. 315.] There is no evidence in this case that defendant could in anywise do more for his family than he actually did do; there is no evidence that he refused or failed to make such provision as was in his power and ability to do, or that he failed to take any employment open to him. The defendant's testimony stands uncontradicted that he exhibited a solicitude for his family's welfare. He attempted to pay $7 or $8 out of an earning of $10, which the wife scornfully refused.

The State's case rests upon the bare statement of defendant's brother-in-law, as hearsay evidence, that defendant was working and that his sister told him defendant had given her only $10 during the two and a half months of separation, and that the children were in need of food and clothing; the child's testimony that the mother had gotten only $10 from his father, as far as he knew, during this time, and a third witness that the family was in poor financial circumstances. It appears uncontradicted that this defendant was not only willing to go to work and reestablish a provision for his family, but that

eagerly sought to reestablish the family and the home and give such earnings as he could make to maintain it.

We appreciate the seriousness of the wrong charged in the information, which however argues no more on the side of the State for conviction than on the side of the accused for acquittal. The proof here must be weighed in the same balance as are other criminal charges. Any other theory leads to a fearsome application of the law. The wrong charged is considered by our lawmakers, and most properly so, to be of a public character because the violation of the natural instinct to provide for one's children and dependents possesses elements of evil which affect the State, the public as a whole and not merely those persons neglected. Thus the statute describes the act and denounces same as a crime, and provides a punishment for a violation of the law. No crime can be committed (in this class of cases) if the mind of the person committing the act is innocent. In other words, a guilty intent must be proven, either directly or inferentially. *Actus non facit reum, nisi mens sit rea.* The proof in the instant case wholly fails to support the charge in the information, and the judgment of the court of criminal correction is reversed and the defendant discharged. *Allen, P. J.,* and *Becker, J.,* concur.